UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN LENNARTSON, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

PAPA MURPHY'S HOLDINGS, INC.; and
PAPA MURPHY'S INTERNATIONAL
L.L.C.,

Defendants.

No. 3:15-cv-05307-RBL

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR STAY**

**NOTE ON MOTION CALENDAR:
October 16, 2015**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

    A. Plaintiff's Complaint ................................................................................... 2

    B. Papa Murphy's Text Messaging Program .................................................. 3

    C. Plaintiff's Enrollment In the Text Messaging Program ............................. 4

    D. The TCPA's Consent Requirement ............................................................ 5

III. ARGUMENT ...................................................................................................... 7

    A. Papa Murphy's is entitled to summary judgment because the plaintiff gave prior written consent to receive promotional text messages. ..................... 8

        1. Plaintiff's prior written consent was valid under the FCC's pre-October 2013 regulations. ........................................................................ 9

        2. Plaintiff's prior written consent remained valid following the October 2013 rule changes. ..................................................................... 10

            i. The First Factor: This is not a case of first impression. ............ 12

            ii. The Second and Third Factors: The FCC's order reasonably appeared to permit the "grandfathering" of previous written consents into the new consent scheme. .......... 12

            iii. The Fourth Factor: Retroactive application would create a devastating burden to Papa Murphy's in this case. .................... 13

            iv. The Fifth Factor: Any interest in retroactive application of the rule is outweighed by the reasonable reliance of Papa Murphy's (and others) on the previously articulated standard ...................................................................................... 13

    B. Plaintiff's claims must also be dismissed because the provision added by the FCC's 2013 rule changes that relates to this case is unconstitutional under the Supreme Court's recent decision in Reed v. Town of Gilbert. ......... 14

    C. Alternatively, this action should be stayed pending a ruling from the U.S. Supreme Court in the Spokeo matter ............................................................... 17

        1. The Supreme Court's determination of standing for statutory damage claims is currently pending in Spokeo. ................................... 18

        2. The Court should enter a stay pending resolution of the Supreme Court's decision in Spokeo ........................................................................ 20

            i. The orderly course of justice would be promoted by a stay ......................................................................................................... 20

            ii. Papa Murphy's will suffer hardship if the case is not stayed ...................................................................................................... 22

            iii. Plaintiff will not suffer prejudice from a stay. ......................... 22

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - i
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**TABLE OF CONTENTS**
(continued)

Page

IV.     CONCLUSION .......................................................................................... 23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - ii
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

# TABLE OF AUTHORITIES

CASES

*Alvarez v. T-Mobile USA, Inc.*,
No. 2:10-cv-2373, 2010 WL 5092971 (E.D. Cal. Dec. 7, 2010) ...................................21, 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..........................................................................................................7

*Baird v. Sabre Inc.*,
995 F. Supp. 2d 1100 (C.D. Cal. 2014) .............................................................................6

*Beaudry v. TeleCheck Servs., Inc.*,
579 F.3d 702 (6th Cir. 2009) ...........................................................................................19

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) ...............................................................................15, 16, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................................................7

*Clark–Cowlitz Joint Operating Agency v. FERC*,
826 F.2d 1074 (D.C.Cir.1987) ...................................................................................12, 13

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .............................................................................................8

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ...........................................................................................19

*Doe v. Nat'l Bd. of Medical Examiners*,
199 F.3d 146 (3d Cir. 1999) .............................................................................................19

*Fernandez v. Obesity Research Institute, LLC*,
No. 2:13-cv-975, 2013 WL 4587005 (E.D. Cal. Aug. 28, 2013) .........................................8

*Fontenot v. McCraw*,
777 F.3d 741 (5th Cir. 2015) ...........................................................................................19

*Garfias-Rodriguez v. Holder*,
702 F.3d 504 (9th Cir. 2012) ...........................................................................................12

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - iii
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    27 F.C.C. Rcd. 1830 (2012) .................................................................. 6, 10, 16

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 F.C.C. Rcd. 7961 (2015) .................................................................. 7, 10, 13

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
    7 F.C.C.R. 8752 (Oct. 16, 1992) ........................................................... 5, 9

*Kendall v. Employees Retirement Plan of Avon Prods.*,
    561 F.3d 112 (2d Cir. 2009) ................................................................. 19

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................ 8, 22

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ............................................................... 8

*McCarn v. HSBC USA, Inc.*,
    No. 1:12-cv-375, 2012 WL 1232334 (E.D. Cal. April 12, 2012) ......................... 20

*Miguel-Miguel v. Gonzales*,
    500 F.3d 941 (9th Cir. 2007) ............................................................... 12

*Montgomery Ward & Co. v. F.T.C.*,
    691 F.2d 1322 (9th Cir. 1982) ............................................................. 11, 12, 14

*Munoz v. PHH Corp.*,
    No. 1:08-cv-759, 2011 WL 4048708 (E.D. Cal. Sept. 9, 2011) ........................ 20, 21

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006) ............................................................... 19

*Pennsylvania State Troopers Ass'n v. Pawlowski*,
    No. 1:09-CV-1748, 2011 WL 9114 (M.D. Pa. Jan. 3, 2011) ............................. 22

*Peters v. St. Joseph Servs. Corp.*,
    No. 4:14-cv-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015) ........................ 19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - iv
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................................ 20

*Reed v. Town of Gilbert, Ariz.*,
    135 S. Ct. 2218 (2015) ................................................................ 2, 14, 15, 16

*Retail, Wholesale and Department Store Union v. NLRB*,
    466 F.2d 380 (D.C.Cir.1972) ........................................................................ 11

*Robins v. Spokeo, Inc.*,
    742 F.3d 409 (9th Cir. 2014) ........................................................................ 19

*Robins v. Spokeo, Inc.*,
    No. CV10-05306 ODW, 2011 WL 11562151 (C.D. Cal. Sep. 19, 2011) ........... 19

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ....................................................................................... 11

*Stone v. Sterling Infosystems, Inc.*,
    No. 2:15-CV-00711-MCE, 2015 WL 4602968 (E.D. Cal. July 29, 2015) ......... 21

*Van Patten v. Vertical Fitness Grp., LLC*,
    22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) .................................................. 6, 9

*Verizon Tel. Companies v. F.C.C.*,
    269 F.3d 1098 (D.C. Cir. 2001) ..................................................................... 11

**STATUTES**

47 U.S.C. § 227 ........................................................................................................... 2, 3

47 U.S.C. § 227(b)(1) ................................................................................................. 5, 15

47 U.S.C. § 227(b)(3)(B) ............................................................................................... 13

Pub. L. No. 102-243, § 2(9) (1991) ............................................................................... 14

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(a)(1) .............................................................................................. 15

47 C.F.R. § 64.1200(a)(2) .................................................................................. 15, 16, 17

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - v
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

# TABLE OF AUTHORITIES
## (continued)

Page

Fed. R. Civ. P. 56(a) ...................................................................................................................7

*Spokeo, Inc. v. Robins*, 13–1339, "Question Presented," available at
http://www.supremecourt.gov/qp/13-01339qp.pdf (last visited September 23,
2015).......................................................................................................................................18

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - vi
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**I.    INTRODUCTION**

The undisputed facts establish that plaintiff affirmatively requested to receive text messages from defendants on his cellular telephone.    Notwithstanding his prior actions, plaintiff now brings a putative class action against Papa Murphy's Holdings, Inc. and Papa Murphy's International L.L.C. (collectively, "Papa Murphy's") seeking statutory damages for the text messages he consented to receive.

Plaintiff attempts to make a valid claim out of these unfavorable facts by arguing that the consent he provided to Papa Murphy's in 2012, which was valid under then-current regulations, was no longer valid after the October 2013 Telephone Consumer Protection Act ("TCPA") rule changes that mandated, in the case of advertising messages, additional elements for consent to be adequate.    But plaintiff's argument ignores the fact that the Federal Communication Commission ("FCC") specifically states in its order promulgating the October 2013 TCPA rule changes that written consent obtained *prior* to October 2013 would remain valid *after* the rule changes.

Indeed, the FCC itself recently conceded that its prior ruling "could have reasonably been interpreted to mean that written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule."    The law is clear that administrative rulings are not to be applied retroactively when such an application would cause injustice.    The present case falls squarely within such a rule:    Plaintiff  provided written consent to receive text messages; Papa Murphy's followed the FCC's guidance that written consents obtained prior to the rule change would remain valid; and a retroactive application of the disclosure requirement could subject Papa Murphy's to obscene statutory damages (based on text messages plaintiff and the putative class asked to receive).    Accordingly, Papa Murphy's has not violated the TCPA, and plaintiff's claim should be dismissed.

Additionally, the provision plaintiff relies on from the October 2013 TCPA rule changes cannot be enforced against Papa Murphy's because, under the new framework for evaluating

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 1
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

the regulation of speech set forth in *Reed v. Town of Gilbert*, it is unconstitutional. Indeed, as discussed below, a recent decision from the Fourth Circuit striking down South Carolina's "anti-robocall" statute applies the *Reed* analysis to similar circumstances. Thus, plaintiff's claim fails for the wholly independent reason that the regulation on which he relies is unconstitutional.

If the Court declines to grant Papa Murphy's[1] motion for summary judgment, Papa Murphy's respectfully requests the Court stay this action until the U.S. Supreme Court issues its ruling in *Spokeo Inc. v. Robins* (No. 13-1339). The Supreme Court is poised to decide whether the "case or controversy" requirement of Article III is met where, as here, a plaintiff has not suffered concrete harm, but alleges only a statutory violation. If the Supreme Court holds in *Spokeo* that a plaintiff without a concrete harm lacks standing, plaintiff's claim in this case should be dismissed. As a result, a short stay of these proceedings pending the Supreme Court's decision in *Spokeo* is proper to avoid a potential unnecessary expenditure of resources by the Court and the parties.

## II.     BACKGROUND

### A.     Plaintiff's Complaint

Plaintiff brings a single cause of action for violation of the TCPA, 47 U.S.C. § 227. *See* Dkt. No. 1, ¶¶ 37–46. Specifically, plaintiff alleges that on April 6, 2015, he received a text message that reads, "Papa Murphy's: Today only 4/6/15 A Big Deal for the Big Game! Get a $10 Lg 5-Meat Stuffed Pizza Valid@participating Stores. Msg&DataRatesMayApply. STOP to end." *Id.* ¶ 22. Plaintiff further claims he received numerous prior messages from Papa Murphy's that are similar to one received on April 6, 2015. *Id.* ¶ 23. In his Complaint, plaintiff does not describe how, or when, he started to receive text messages and states only: "Plaintiff did not provide prior express written consent to receive text message marketing from Defendants." *Id.* ¶ 26. Finally, plaintiff alleges that the text messages he received were sent

---

[1] To avoid an over-abundance of apostrophes, Papa Murphy's will write the possessive form of Papa Murphy's as "Papa Murphy's" throughout this brief.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 2
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

using an auto-dialer. *Id.* ¶ 27. Absent from plaintiff's Complaint are any allegations that he attempted to cease receiving text messages by replying "STOP" or contacting Papa Murphy's in any other way. Further, aside from the vague allegation that the text message plaintiff received was sent "in knowing violation of Plaintiff's privacy," plaintiff makes no claim that he was personally harmed by receipt of any of Papa Murphy's text messages.[2]

## B.  Papa Murphy's Text Messaging Program

Papa Murphy's started its text messaging program in April of 2011 as a way to offer discounts to its customers and drive business. *See* Declaration of Andrew Brawley in Support of Defendants' Motion for Summary Judgment Or, in the Alternative, For Stay ("Brawley Decl.") ¶ 2. The text messages Papa Murphy's sent pursuant to this program offered customers discounts they could redeem at Papa Murphy's stores. *Id.* Since starting its texting program, Papa Murphy's has built its list of text recipients solely through voluntary opt-ins—it has never purchased lists from third-parties or contacted numbers at random. *Id.* For the duration of Papa Murphy's texting program, customers have been able to opt in to receive text messages in two ways: First, by going to Papa Murphy's website and signing up to receive text messages and, second, by sending text messages to specified numbers that appear in Papa Murphy's advertisements. *Id.* ¶ 3. Papa Murphy's has never placed people into its texting pool because they provided their telephone numbers as part of purchasing goods. *Id.* Finally, since the start of its program, it has always provided people the option of opting out of receiving text messages by replying "stop" to any of the text messages they receive and has stated in each of its text messages that such an option is available. *Id.* ¶ 4.

/////

/////

---

[2] Paragraphs 4 and 46 of plaintiff's Complaint allege generally that Papa Murphy's text messages caused "actual harm" "not only because consumers were subjected to the aggravation that necessarily accompanies text message advertisements, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam, and such messages diminish battery life, waste data storage capacity, and are an intrusion upon privacy and seclusion." Dkt. No. 1, ¶ 4. The Complaint, however, makes no allegation that plaintiff suffered any of these alleged harms.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 3
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

### C. Plaintiff's Enrollment In the Text Messaging Program

In accordance with Papa Murphy's text message program, plaintiff opted in to receive text messages through Papa Murphy's website. Brawley Decl. ¶ 7. Records kept in the ordinary course of business indicate that plaintiff signed up to receive text messages on March 2, 2012. *Id.*

To accomplish this, plaintiff first had to navigate to Papa Murphy's home page (www.papamurphys.com). Brawley Decl. ¶ 5. During March of 2012, six "buttons" appeared on the left side of the Papa Murphy's homepage, which read in descending order: "Our Menu," "What Is Take 'N' Bake?," "Coupons & eClub," "Franchise Opportunities," "Careers," and "Gift Cards." *Id.* To navigate to the text message sign up form, individuals had to click on the "Coupons & eClub" button. *Id.* On the "Coupons & eClub" page, the following text appeared in the center of the page: "To join Papa Murphy's Text Club for coupons & special offers, please enter your mobile number below. You will receive **4 text messages per month**. To unsubscribe from our text club at any time text **STOP** to 74499 or 95323. For questions or help with the text club, text **HELP** to 74499 or 95323, call 800-257-7272 or email us at guestservices@papamurphys.com." *Id.* ¶ 6 (emphasis in original). Above this text, were boxes in which individuals could enter their first name, last name, email address, postal code, birth day, and birth month. *Id.* Below the quoted text, was a box in which individuals could enter their telephone number and a button entitled "Join eClub" that, when clicked, caused the information entered into the boxes to be sent to Papa Murphy's third-party texting vendor. *Id.*

Records indicate that on March 2, 2013, an individual submitted a request to receive text messages through Papa Murphy's website, and that through this request, the person submitted the following information: Phone number: "6126186664"; Last name: "Lennartson"; Zip code: "55406." Brawley Decl. ¶ 7. Plaintiff's counsel has confirmed that plaintiff's telephone number is indeed 612-618-6664. Declaration of Stellman Keehnel in Support of Defendants' Motion for Summary Judgment Or, in the Alternative, For Stay ¶ 2, Ex. A. In

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 4
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

order for this information to have been received, the individual submitting this information would have had to go to Papa Murphy's website, navigate to the "Coupons & eClub" page, enter the above-quoted information and click the "Submit" button on the webpage. Brawley Decl. ¶ 8. Finally, upon receipt of this information the following text message was transmitted on March 2, 2012 to the telephone number 612-618-6664: "You are now opted into: PMI Global Phone List alerts, reply STOP 2end Msg&Data Rates may apply." *Id.* ¶ 9.

Plaintiff never replied "stop" or made any effort whatsoever to opt out of receiving text messages. Papa Murphy's first notice of plaintiff's purported displeasure with receiving text offers was this lawsuit. Brawley Decl. ¶ 11. Plaintiff's number was removed after this lawsuit was received, and Papa Murphy's ceased sending text messages to individuals who had opted in to receive text messages prior to October 16, 2013. *Id.*

The undisputed facts establish that plaintiff went to Papa Murphy's website and signed up to receive text messages, then, rather than simply texting "stop" to cease receiving these text messages, he filed a lawsuit.

### D. The TCPA's Consent Requirement

The statutory provision of the TCPA under which plaintiff brings the current case, 47 U.S.C. § 227(b)(1), states as follows:

> It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1).

The statute does not define "prior express consent." Before October 2013, the FCC defined "consent" broadly to include non-written forms of consent. *See In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992) ("persons who knowingly release their phone numbers have in effect given their invitation or

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 5
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

permission to be called at the number which they have given, absent instructions to the contrary."). Courts in turn held that passively providing a telephone number, without more, constituted valid consent. *See, e.g.*, *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014) ("it is undisputed that Baird knowingly release[d] her cellphone number to Hawaiian Airlines when she booked her tickets, and by doing so gave permission to be called at that number by an automated dialing machine.") (internal quotations omitted); *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) (holding plaintiff consented to receive text messages when he provided his telephone number upon joining gym).

In 2012, however, the FCC prospectively altered the consent requirement and stated that after October 16, 2013, companies were required to obtain written consent. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012) ("we require prior express written consent for all telephone calls using an automatic telephone dialing system or a prerecorded voice to deliver a telemarketing message to wireless numbers and residential lines."). The FCC made clear that this new written consent requirement would only apply after October 16, 2013. *Id.* at 1857 (stating that implementation period for new written consent requirement "will commence upon publication of OMB approval of our written consent rules in the Federal Register."). The FCC also stated that in order to obtain proper written consent, entities had to disclose to potential recipients that text messages would come from an "automatic telephone dialing system or an artificial or prerecorded voice" and that a person did not have to consent to receive text messages in order to purchase goods or services. *Id.* at 1844.

In its 2012 order, the FCC also addressed the issue of whether written consents obtained prior to the October 2013 rule changes would remain valid. The FCC stated that they would. *Id.* ("Once our written consent rules become effective … an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls **absent prior written consent.**") (emphasis

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 6
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1  added).  The plain meaning of the FCC's language is that post-October 2013, consent would

2  have to adhere to the new requirements, but that, where "prior written consent" exists, the

3  individual would be effectively grandfathered into the new scheme.

4      In its recent July 10, 2015 order, however, the FCC reversed course and stated that to be

5  valid, written consents obtained prior to the October 2013 rule changes had to contain the new

6  disclosures regarding use of "automatic telephone dialing systems" and consent not being a

7  condition of purchase.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer*

8  *Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8014 (2015).  In making this ruling, the FCC

9  specifically acknowledged that the language in its prior order that "'an entity will no longer be

10  able to rely on non-written forms of express consent to make autodialed or prerecorded voice

11  telemarketing calls, and thus could be liable for making such calls absent prior written consent'

12  …. could have ***reasonably been interpreted to mean*** that written consent obtained prior to the

13  current rule's effective date would remain valid even if it does not satisfy the current rule." *Id.*

14  (emphasis added).  Thus, the FCC itself admits that parties could have reasonably believed

15  prior written consent was sufficient for those individuals who enrolled before October 16,

16  2013, and that such an understanding was reasonable at least until the date of the FCC's

17  clarifying order of July 10, 2015 (which, incidentally, post-dates the date of the last text sent to

18  the plaintiff). *See* Brawley Decl. ¶ 11.

19                                    **III.    ARGUMENT**

20      Papa Murphy's seeks an order of summary judgment on plaintiff's claims based on

21  plaintiff's uncontroverted consent to receive the very texts about which he sues.  It is axiomatic

22  that summary judgment is appropriate where "the movant shows that there is no genuine

23  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

24  R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The nonmoving

25  party (plaintiff) must make a "sufficient showing on an essential element of her case with

26  respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 7
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  *Catrett*, 477 U.S. 317, 323 (1986).  Here, where the facts are not in dispute and the issue is

2  entirely legal in character, resolution by summary judgment is unquestionably appropriate.

3        Papa Murphy's alternatively seeks a stay, in the event this Court denies its motion for a

4  summary judgment, based on the pendency of an issue before the U.S. Supreme Court that

5  could result in a determination that plaintiff is without standing to assert the claims stated in his

6  Complaint.  The power of the Court to stay proceedings is "incidental to the power inherent in

7  every court to control the disposition of the causes on its docket with economy of time and

8  effort for itself, for counsel, and for litigants." *Fernandez v. Obesity Research Institute, LLC*,

9  No. 2:13-cv-975, 2013 WL 4587005, at *6 (E.D. Cal. Aug. 28, 2013) (quoting *Landis v. N. Am.*

10 *Co.*, 299 U.S. 248, 254–55 (1936)).  This Court has "broad discretion in deciding whether to

11 issue a stay" *Fernandez*, 2013 WL 4587005, at *6. Consistent with such "broad discretion," a

12 "trial court may . . . find it is efficient for its own docket and the fairest course for the parties to

13 enter a stay of an action before it, pending resolution of independent proceedings which bear

14 upon the case." *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th

15 Cir. 1979)).  In determining whether to grant a stay, the Ninth Circuit instructs district courts to

16 weigh "the competing interests which will be affected by the granting or refusal to grant a stay"

17 *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  These competing interests include: (1)

18 "the orderly course of justice measured in terms of the simplifying or complicating of issues;"

19 (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3)

20 "the possible damage which may result from the granting of a stay." *Fernandez*, 2013 WL

21 4587005, at *6 (quoting *CMAX*, 300 F.2d at 268).   As explained below, each of the *CMAX*

22 factors weigh heavily in favor of a stay.

23        **A.    Papa Murphy's is entitled to summary judgment because the plaintiff gave
              prior written consent to receive promotional text messages.**

24

25        Plaintiff's TCPA claim fails for the simple reason that he purposefully enrolled himself

26 in Papa Murphy's promotional text program and, thus, unequivocally consented to receive the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 8
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

very text messages he now sues about. There is no dispute that plaintiff gave prior written consent and that such consent was valid under the pre-October 2013 regulations. Further, the FCC's order promulgating the October 2013 TCPA rule changes specifically stated that while entities would not be able to rely on "non-written" forms of consent obtained before the rule change, "written consent" would protect an entity from liability. Under Ninth Circuit authority, the FCC's recent July 10, 2015 order stating that prior written consents are not valid if they lacked specific disclosures cannot apply retroactively (to Papa Murphy's) because such an application would be unjust and would create an inequitable result.

**1. Plaintiff's prior written consent was valid under the FCC's pre-October 2013 regulations.**

Plaintiff cannot reasonably argue that the consent he provided to receive text messages in March of 2012 was invalid under the then-current regulations. As explained above, prior to the October 2013 TCPA rule changes, a person who passively provided his or her telephone number to an entity, without the entity even stating it would send text messages, was considered valid consent. *See In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. at 8769 ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *see also Van Patten*, 22 F. Supp. 3d at 1078.

Plaintiff did much more than passively provide his telephone number to Papa Murphy's. Plaintiff took the affirmative step of going to Papa Murphy's website and asking to receive text messages by submitting an online form, and was given notice by the Papa Murphy's website that he would in fact regularly receive texts from Papa Murphy's. *See* Brawley Decl. ¶ 6. Plaintiff's actions constituted valid consent in 2012.

/////

/////

/////

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 9
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

**2. Plaintiff's prior written consent remained valid following the October 2013 rule changes.**

The FCC's July 2015 statement that written consents obtained prior to October 2013 are only valid if they contain certain disclosures should not be applied retroactively (*i.e.*, previous to the July 10, 2015 clarification) given the inequities such an application would cause and given that the FCC itself concedes its October 2013 rule changes suggested prior written consent would be grandfathered into the new framework.

As detailed above, in its 2012 order promulgating the updated consent requirements, the FCC stated that: "Once our written consent rules become effective … an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls **absent prior written consent**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. at 1857 (emphasis added). The FCC did not state in its order that this "prior written consent" had to contain the disclosures the new regulations mandated. Additionally, in the above-quoted text, the FCC specifically juxtaposed "non-written forms of consent," which would no longer be valid, with "written consent[s]," which would remain valid, further suggesting that the validity of prior consents would turn only on whether they were in writing. Indeed, in its subsequent July 2015 order, the FCC stated that the previous rule changes "could have reasonably been interpreted to mean that written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. at 8014. Accordingly, the FCC's July 2015 statement that written consents obtained prior to the October 2013 rule change would only be valid if they contained specific disclosures represented a significant shift in the law.

When, as here, an administrative agency acts through adjudication to alter standards with which an entity must comply, such standards will not have retroactive application if doing

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 10
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

so would create inequities. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) (stating an agency may give retroactive force to a new rule created through adjudicatory action, but "[the] retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles."); *Montgomery Ward & Co. v. F.T.C.*, 691 F.2d 1322, 1328 (9th Cir. 1982) ("when a new problem is presented to an administrative agency, the agency may act through adjudication to clarify an uncertain area of the law, so long as the retroactive impact of the clarification is not excessive or unwarranted."); *Verizon Tel. Companies v. F.C.C.*, 269 F.3d 1098, 1109 (D.C. Cir. 2001) ("there is a robust doctrinal mechanism for alleviating the hardships that may befall regulated parties who rely on 'quasi-judicial' determinations that are altered by subsequent agency action…. retroactivity will be denied when to apply the new rule to past conduct or to prior events would work a manifest injustice").

To evaluate the equities involved in applying an agency adjudicatory decision retroactively, courts in the Ninth Circuit consider five non-exhaustive factors:

    (1)    whether the particular case is one of first impression,

    (2)    whether the new rule represents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law,

    (3)    the extent to which the party against whom the new rule is applied relied on the former rule,

    (4)    the degree of the burden which a retroactive order imposes on a party, and

    (5)    the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Montgomery Ward*, 691 F.2d 1322 at 1333 (adopting the factors set forth in *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380, 390–93 (D.C.Cir.1972)).

Each of these factors weigh against retroactive application of the FCC's July 2015 ruling that consents obtained prior to October 2013 must contain specific disclosures.

/////

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 11
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

### i. The First Factor: This is not a case of first impression.

It is common sense that it is inequitable for an agency adjudication to be applied retroactively where it is not an issue of first impression, but rather an issue that the agency previously confronted and later alters. Put another way, this factor militates against retroactive application when a standard has already been articulated and the agency changes that standard in a subsequent ruling, or is a case of "second impression." *See Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007) (analyzing first *Montgomery Ward* factor and stating "retroactivity is disfavored where the [agency] ha[s] confronted the problem before, ha[s] established an explicit standard of conduct, and now attempts to punish conformity to that standard under a new standard subsequently adopted") (internal quotations omitted). Here, the FCC had already articulated the standard for how to evaluate prior consents when it changed course in July of this year. This is not a case in which the FCC was considering the issue for the first time; rather, it was changing a standard it had already set. Thus, this factor weighs against retroactive application of the July 2015 ruling.

### ii. The Second and Third Factors: The FCC's order reasonably appeared to permit the "grandfathering" of previous written consents into the new consent scheme.

The second and third factors also weigh against retroactive application. These two factors are closely intertwined and are meant to evaluate whether the new rule "represents an abrupt departure from well-established practice, [making] a party's reliance on the prior rule … reasonable," or whether the new rule "merely attempts to fill a void in an unsettled area of law," making reliance less reasonable. *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 521 (9th Cir. 2012) (internal quotes omitted); *see also Clark–Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1082 (D.C.Cir.1987) (stating that the second factor "requires the court to gauge the unexpectedness of a rule and the extent to which the new principle serves the important but workaday function of filling in the interstices of the law."). This analysis "implicitly recognizes that the longer and more consistently an agency has followed one view of the law,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 12
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

the more likely it is that private parties have reasonably relied to their detriment on that view."

*Clark–Cowlitz*, 826 F.2d at 1082–83. Again, in the present case, the FCC specifically stated that its 2012 order "***could have reasonably been interpreted*** to mean that written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. at 8014 (emphasis added). The FCC waited over three years before changing course and stating that the prior consents had to contain the new disclosures. Accordingly, in the FCC's own words, Papa Murphy's could have reasonably relied on its prior ruling to its detriment.

   **iii.**  **The Fourth Factor: Retroactive application would create a devastating burden to Papa Murphy's in this case.**

   The fourth factor, "the degree of the burden which a retroactive order imposes on a party," virtually commands that the order not be applied retroactively. Application of the July 2015 order to pre-July 2015 events could subject Papa Murphy's to ruinous statutory damages despite its having obtained prior written consent from plaintiff (and all the potential class members to which it sent text messages). Under the TCPA, a plaintiff can recover $500 for each call made in violation of the statute. *See* 47 U.S.C. § 227(b)(3)(B). This damages amount multiplied by each text plaintiff received, and then by the total number of putative class members, could expose Papa Murphy's to astronomical statutory damages. Such a burden should not be placed on a party that followed the "reasonable interpretation" of the FCC's prior ruling.

   **iv.**  **The Fifth Factor: Any interest in retroactive application of the rule is outweighed by the reasonable reliance of Papa Murphy's (and others) on the previously articulated standard.**

   Finally, the fifth factor also weighs against retroactive application. The FCC's purpose is to ensure a clear standard for consent is promulgated. It has (now) done that. There is no

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 13
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1  legitimate interest in attempting to punish an entity for following the previously articulated

2  standard during that period of time when the FCC itself admits reliance on that standard was

3  "reasonable."

4         In enacting the TCPA, Congress stated that "[i]ndividuals' privacy rights, public safety

5  interests, and commercial freedoms of speech and trade must be balanced in a way that protects

6  the privacy of individuals and permits legitimate telemarketing practices." Pub. L. No. 102-

7  243, § 2(9) (1991). Here, subjecting an entity to astronomical statutory damages will not

8  further individuals' privacy rights. Further, it is a stretch to believe that obtaining individuals'

9  written consent, and then following the FCC's guidance that such consent was valid, is not (or

10  at least, was not) a "legitimate telemarketing practice."

11         All of the *Montgomery Ward* factors, as well as basic considerations of equity, counsel

12  against retroactive application of FCC's July 2015 ruling. Papa Murphy's stopped sending text

13  messages to plaintiff when this litigation commenced, as well as to all other putative class

14  members who had signed up to receive text messages prior to October 2013. Brawley Decl.

15  ¶ 11. Accordingly, Papa Murphy's was in compliance with the FCC's 2015 order when it was

16  issued and has complied with it prospectively. It should not now be punished for failing to

17  comply with the rule before it was properly stated.

18         **B.      Plaintiff's claims must also be dismissed because the provision added by the
            FCC's 2013 rule changes that relates to this case is unconstitutional under**
19          **the Supreme Court's recent decision in *Reed v. Town of Gilbert*.**

20         There is a second, separate and independent, basis for dismissal: The new regulation

21  the FCC promulgated at issue in this case is an unconstitutional restriction on speech. The U.S.

22  Supreme Court recently provided a new framework for evaluating whether government

23  regulation of speech is constitutional. The Court broadly held that any law that places content-

24  based restrictions on speech is presumptively unconstitutional and subject to strict scrutiny.

25  *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) ("Content-based laws—those

26  that target speech based on its communicative content—are presumptively unconstitutional and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 14
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  may be justified only if the government proves that they are narrowly tailored to serve

2  compelling state interests."). This framework does away with an analysis of the government's

3  purpose in enacting the law or regulation, and instead focuses on whether the law or regulation

4  is content-based on its face. *Id.* At least one U.S. Circuit Court has utilized the *Reed*

5  framework to subject a state's "anti-robocall" statute to strict scrutiny and ultimate invalidation

6  as unconstitutional. *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015). An examination of the

7  new TCPA regulation at issue here quickly reveals that, unlike its predecessor (which applied

8  equally to all calls from auto-dialers made to cell phones), it is limited to messages of a certain

9  character (advertising) and is therefore content-based on its face, subject to strict scrutiny, and

10  not narrowly tailored to serve a compelling government interest.

11      The TCPA itself is content-neutral. The applicable statutory language makes "**any** call

12  (other than a call made for emergency purposes or made with prior express consent of the

13  called party) using any automatic telephone dialing system" to a cellular telephone unlawful.

14  *See* 47 U.S.C. § 227(b)(1) (emphasis added). And, prior to the October 2013 rule changes, the

15  federal regulations regarding restricted autodialed calls to cellular telephones also remained

16  content neutral. *See* 47 C.F.R. § 64.1200(a)(1) ("No person or entity may … initiate any

17  telephone call (other than a call made for emergency purposes or is made with the prior express

18  consent of the called party) using an automatic telephone dialing system or an artificial or

19  prerecorded voice … To any telephone number assigned to a … telephone").

20      But, when the FCC enacted the 2013 rule changes, it added a new regulation that is

21  content-based. That regulation now makes it unlawful to initiate "any telephone call **that**

22  **introduces an advertisement or constitutes telemarketing**, using an automatic telephone

23  dialing system" to a cellular phone unless there is "prior express written consent" (which

24  differs in character from "prior written consent" as discussed in III(a), above). *See* 47 C.F.R.

25  § 64.1200(a)(2) (emphasis added).

26  */////*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 15
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

In *Cahaly*, the Fourth Circuit evaluated a state "anti-robocall" statute that prohibited only calls that had "a consumer or political message." *Cahaly*, 796 F.3d at 402. Because the statute at issued permitted "robocalls" made for some other purpose, it was deemed content-based. *Id.* at 405. In the present case, the FCC actually went from a content-neutral articulation—*i.e.*, all ADAD calls to cell phones are prohibited absent prior written consent—to a content-based articulation—*i.e.*, only those ADAD calls to cell phones that are advertising in nature must have prior express written consent. Thus, the FCC's new enactment is subject to a strict scrutiny analysis.

Under a strict scrutiny analysis, a law is unconstitutional unless it furthers a compelling government interest and is narrowly tailored to achieve that interest. *See Reed*, 135 S. Ct. 2218, 2231 (2015) ("Because the Town's Sign Code imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest") (internal quotations omitted). Under this standard, "[i]f a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative. Moreover, the restriction cannot be overinclusive by unnecessarily circumscrib[ing] protected expression, or underinclusive by leav[ing] appreciable damage to [the government's] interest unprohibited." *Cahaly*, 796 F.3d at 405 (internal citations and quotations omitted).

The FCC's 2013 rule change, *i.e.*, 47 C.F.R. § 64.1200(a)(2), does not survive this demanding level of review. In enacting its new regulations, the FCC stated that "[w]e believe that requiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls, and will reduce the chance of consumer confusion in responding orally to a telemarketer's consent request." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. at 1839.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 16
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   Assuming *arduengo* that protecting consumers from unwanted telephone calls is a compelling

2   government interest, the FCC's regulations are not narrowly tailored. The Fourth Circuit

3   analyzed South Carolina's anti-robocall statute based on the same government interest. *See*

4   *Cahaly*, 796 F.3d at 405 ("The asserted government interest here is to protect residential

5   privacy and tranquility from unwanted and intrusive robocalls."). The Fourth Circuit also held

6   content based restrictions were not narrowly tailored to serve this interest because "[p]lausible

7   less restrictive alternatives" existed, including "time-of-day limitations, mandatory disclosure

8   of the caller's identity, or do-not-call lists." *Id.* The same logic applies here. Other forms of

9   restriction, some of which the TCPA already contains, could serve the stated purpose without

10  making broad content-based restrictions. Additionally, this specific TCPA regulation is also

11  under inclusive because informational calls can intrude on one's privacy in the same manner as

12  a telemarketing call.

13      Plaintiff's claim hinges on the language of 47 C.F.R. § 64.1200(a)(2). That language

14  does not pass constitutional scrutiny. Accordingly, the regulation cannot be enforced in a

15  manner that would subject Papa Murphy's to liability under the TCPA, and, as such, plaintiff's

16  claims must be dismissed.

17      **C.     Alternatively, this action should be stayed pending a ruling from the U.S.**
        **Supreme Court in the *Spokeo* matter.**
18

19      If the Court declines to grant Papa Murphy's motion for summary judgment, Papa

20  Murphy's respectfully requests the Court grant a stay of this proceeding until the U.S. Supreme

21  Court issues its decision in *Spokeo v. Robins* (No. 13-1339). Plaintiff does not allege that he

22  suffered an actual injury as a result of Papa Murphy's alleged violations of the TCPA. Rather,

23  plaintiff alleges that he is entitled to recover statutory damages under the TCPA. *See generally*

24  Dkt. No. 1; *supra* Section II.A.

25      The question of whether such "statutory standing" alone satisfies Article III's standing

26  requirement has resulted in a split among the circuit courts. To resolve that circuit split, the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 17
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

U.S. Supreme Court recently granted certiorari in *Spokeo*, in which the plaintiff sought no actual damages and alleged no actual harm. In *Spokeo*, the question pending before the Supreme Court is:

> Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute.

*See Spokeo, Inc. v. Robins*, 13–1339, "Question Presented," available at http://www.supremecourt.gov/qp/13-01339qp.pdf (last visited September 23, 2015).

The U.S. Supreme Court's resolution of this question is directly applicable to this case. If the Court agrees with those courts that have rejected "statutory standing," plaintiff will likely not have standing to pursue his claims; or, at the very least, his standing, and the standing of each individual class member, will become a central issue in this case. Given the potentially dispositive effect of the decision in *Spokeo* on this lawsuit, Papa Murphy's respectfully requests that this Court exercise its inherent power and stay all proceedings in this case pending the Supreme Court's resolution of the constitutionality of "statutory standing."

## 1. The Supreme Court's determination of standing for statutory damage claims is currently pending in *Spokeo*.

On April 27, 2015, the U.S. Supreme Court granted certiorari in *Spokeo, Inc. v. Robins*, (No. 13-1339). The Supreme Court's opinion will decide a legal question potentially dispositive of this action: whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm and who therefore could not otherwise invoke the jurisdiction of a federal court by authorizing a private right of action based on a bare violation of a federal statute. Put simply, the Supreme Court's decision in *Spokeo* will directly address whether a plaintiff who suffers no actual damages has standing to seek statutory damages under a federal statute.

/////

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 18
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

The district court dismissed the action in *Spokeo*, holding that a plaintiff does not have standing "where no injury in fact is properly pled." *Robins v. Spokeo, Inc.*, No. CV10-05306 ODW, 2011 WL 11562151, at *1 (C.D. Cal. Sep. 19, 2011). The Ninth Circuit reversed, holding that the "violation of a statutory right is usually sufficient injury in fact to confer standing" and that "a plaintiff can suffer a violation of the statutory right without suffering actual damages." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412–13 (9th Cir. 2014).

In granting certiorari, the Supreme Court is poised to resolve a circuit split on this question. At present, the Fifth, Sixth, and Seventh Circuits agree with the Ninth Circuit's decision in *Spokeo*, and permit plaintiffs to maintain lawsuits without "injury-in-fact," and based solely on an alleged statutory violation. *See Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) ("the maintenance of accurate DPS driving records is a cognizable interest the invasion of which confers standing"); *but see Peters v. St. Joseph Servs. Corp.*, No. 4:14-cv-2872, 2015 WL 589561, at *5 (S.D. Tex. Feb. 11, 2015) (holding plaintiff's speculation that she suffered a risk of future harm was not sufficient for Article III standing in FCRA case); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705–07 (6th Cir. 2009) (allowing plaintiff to proceed with FCRA action despite lack of injury); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (statutory damages are available under the FCRA "without proof of injury").

In stark contrast, the Second, Third, and Fourth Circuits have held, consistent with relevant Supreme Court precedent, that Congress cannot create standing by statute alone, and the mere deprivation of a statutory right is insufficient to confer standing. *See Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009) (in ERISA matter, rejecting argument that deprivation of entitlement to fiduciary duty constitutes an injury-in-fact for purposes of standing); *David v. Alphin,* 704 F.3d 327, 338–39 (4th Cir. 2013) (rejecting the premise that mere deprivation of a statutory right is sufficient to constitute an injury-in-fact for Article III standing in ERISA matter); *Doe v. Nat'l Bd. of Medical Examiners,*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 19
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury . . . Congress . . . cannot confer standing by statute alone."); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

        **2.     The Court should enter a stay pending resolution of the Supreme Court's decision in *Spokeo*.**

The CMAX factors, set forth at the start of Section III, above, all suggest that the grant of a stay in this instance is warranted.

        **i.     The orderly course of justice would be promoted by a stay.**

When considering whether the "resolution of independent proceedings" warrants a stay, courts are not bound to instances where the other proceedings are "controlling of the action before the court." *Munoz v. PHH Corp.*, No. 1:08-cv-759, 2011 WL 4048708, at *2 (E.D. Cal. Sept. 9, 2011). In *Munoz*, for example, the court granted a stay in a purported class action in a situation nearly identical to the instant case. *Id.* at 4. In that case, the plaintiff alleged a technical violation of the Real Estate Settlement Procedures Act ("RESPA"), but did not allege any actual injury. *Id.* at *2. More than two years after the case was filed, the U.S. Supreme Court granted certiorari in another case to decide whether a "private purchaser of real estate settlement services [had] standing to sue under Article III . . . in the absence of any injury in fact." *Id.*

In granting the stay, the *Munoz* court recognized that the "Supreme Court's resolution of [the other proceeding] will provide direct authority on the standing issue; that is whether allegations of [technical RESPA violations], in the absence of an actual, distinct injury, are sufficient to confer Article III standing." *Id.* at *4. In so holding, the court found that there was "no rational reason to proceed further in this case until the standing issue has been clarified by the Supreme Court." *Id. Accord McCarn v. HSBC USA, Inc.*, No. 1:12-cv-375, 2012 WL 1232334, at *2–4 (E.D. Cal. April 12, 2012) (same); *Alvarez v. T-Mobile USA, Inc.*, No. 2:10-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 20
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

cv-2373, 2010 WL 5092971, at *2 (E.D. Cal. Dec. 7, 2010) (granting motion to stay pending resolution of Supreme Court decision that would "be beneficial to the court in hearing this case because it could change or clarify the law").

As in *Munoz*, the resolution of *Spokeo* "will provide direct authority on the standing issue" in this case, by deciding whether allegations of technical TCPA violations alone are sufficient to confer Article III standing on a plaintiff who suffers no actual harm. Given the impact of *Spokeo*, it would be a waste of judicial resources to require the parties to proceed with costly discovery, motion practice, and class certification proceedings. Indeed, as in *Munoz*, there is "no rational reason to proceed further in this case until the standing issue has been clarified by the Supreme Court." *Munoz*, 2011 WL 4048708, at *4.

Additionally, at least one district court within the Ninth Circuit has already granted a stay based on *Spokeo's* potential effect. *See Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 WL 4602968, at *3 (E.D. Cal. July 29, 2015). In *Stone*, the plaintiff brought a putative class action pursuant to the Fair Credit Reporting Act ("FCRA") and sought to recover statutory damages, but alleged no actual harm. *Id.* at *1. The defendant, Sterling Infosystems, Inc., sought a stay pending the decision in *Spokeo* "in order to conserve judicial and party resources." *Id.* The court agreed that a stay was warranted, finding that "staying this action until the Supreme Court issues an opinion in *Spokeo* would be efficient for the Court's own docket and the fairest course for the parties." *Id.* at *3.

Further, if this case is not stayed, the next six months to a year will absorb a substantial amount of the Court's time and resources on discovery issues and class certification motions. It would make little sense to undertake the significant expenditures of time, resources and costs to proceed with a purported class action that may ultimately be wiped away with one decision by the Supreme Court. In short, this Court should not spend its time on this case when the eventual decision in *Spokeo* could require dismissal of plaintiff's lawsuit.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 21
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

**ii.     Papa Murphy's will suffer hardship if the case is not stayed.**

As discussed above, Papa Murphy's will likely expend significant time and money on discovery and certification briefing in the absence of a stay.  However, these resources need not be expended if plaintiff lacks standing.  As a result, Papa Murphy's would be prejudiced in the absence of a brief stay that may determine whether this Court has subject-matter jurisdiction over this case.  *See Pennsylvania State Troopers Ass'n v. Pawlowski*, No. 1:09-CV-1748, 2011 WL 9114, at *1 (M.D. Pa. Jan. 3, 2011) ("it is of no benefit to either party to incur substantial costs litigating an issue that the Supreme Court may very well determine is not actionable in the course of these proceedings."); *Alvarez*, 2010 WL 5092971, at *2 (observing that if the motion to stay were denied pending a decision by the Supreme Court, "Defendant will incur significant costs relating to fact and expert discovery, motion practice, and trial preparation to defend this action.").

**iii.     Plaintiff will not suffer prejudice from a stay.**

Finally, plaintiff cannot credibly claim prejudice from having to wait slightly longer to pursue his claim because he claims no actual harm.  Plaintiff therefore seeks only to vindicate an alleged technical violation of the TCPA that caused no harm.  In the absence of redressing actual harm, a short stay of a reasonably knowable duration—likely to be no more than six months, and unlikely to exceed a year—does not constitute unfair prejudice to plaintiff.  *Landis v. N. Am. Co.*, 299 U.S. 248, 256, (1936) ("the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.")

Plaintiff will likely argue that, under existing Ninth Circuit precedent, he (at least for the moment) has standing to proceed.  Plaintiff will also undoubtedly argue that a stay would prejudice him by preventing him from proceeding with litigation that he currently has a right to pursue.  That argument, however, runs squarely into the fact that the Supreme Court is about to decide whether plaintiffs who lack actual harm have standing.  If plaintiff's claim attempted to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 22
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

redress actual harm, reliance on current Ninth Circuit law would be more convincing. But denying this motion and permitting plaintiff to proceed would be nothing more than allowing him to attempt to run up the costs of litigation and/or attempt to extract a settlement before a potentially adverse Supreme Court decision that would quash his lawsuit altogether.

Plaintiff may also argue that regardless of *Spokeo* he will have standing because of the vague claims of actual harm asserted in the Complaint. *See supra* Section II.A. Such an argument does not counsel against a stay. <u>First</u>, plaintiff does not assert that he personally suffered any actual harm, which would likely justify dismissal of his individual claim. *See generally* Dkt. No. 1. <u>Second</u>, and more importantly, even if the statements in the Complaint regarding how text messages can cause actual harm are construed to apply to plaintiff, *Spokeo* could dramatically change how this case proceeds.

Finally, this case is still in its infancy. Plaintiff and his counsel cannot have expended significant costs to date. There has been no discovery to date. At most, plaintiff's counsel has conducted a preliminary investigation to warrant the filing of the Complaint. Indeed, although plaintiff may disagree, the most likely scenario is that his interests are protected, rather than prejudiced, by a stay. Considering the substantial amount of resources that will go into this case in the next six to twelve months if not stayed, likely including extensive motion practice, plaintiff and his counsel could invest significant time and money in a case that ultimately may be dismissed for lack of standing. A short stay to await a precedential ruling is thus in each party's interest.

## IV.    CONCLUSION

This is a TCPA action in which plaintiff unequivocally consented to receive text messages from Papa Murphy's. Indeed, he actively sought them out through Papa Murphy's website. The texts he received complied with the existing regulations regarding prior written consent; and, to the extent those regulations changed, the inadequacy of the prior written consent was not explained until *after* Papa Murphy's had already removed plaintiff from its

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 23
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

marketing lists. Thus, the TCPA was not violated, and Papa Murphy's deserves a summary judgment in its favor. Summary judgement is also warranted for the independent reason that the regulation under which plaintiff brings his claim is unconstitutional under *Reed*.

At a minimum, if the Court declines to dismiss plaintiff's claims, Papa Murphy's respectfully requests that the Court stay this motion until the Supreme Court issues its opinion in *Spokeo Inc. v. Robins* (No. 13-1339).

RESPECTFULLY SUBMITTED this 24th day of September, 2015.

DLA PIPER LLP (US)

*s/ Stellman Keehnel*
Stellman Keehnel, WSBA No. 9309
*s/ Anthony Todaro*
Anthony Todaro, WSBA No. 30391
*s/ Jeffrey DeGroot*
Jeffrey DeGroot, WSBA No. 46839
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
Tel: 206.839.4800
Fax: 206.839.4801
Email: stellman.keehnel@dlapiper.com
Email: anthony.todaro@dlapiper.com
Email: jeffrey.degroot@dlapiper.com

*Attorneys for Papa Murphy's Holdings, Inc. and Papa Murphy's International L.L.C.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 24
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on September 24, 2015, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

counsel of record.

5

6

*s/ Stellman Keehnel*
Stellman Keehnel, WSBA No. 9309

7

8

WEST\259052803.4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, FOR STAY - 25
No. 3:15-cv-05307-RBL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800