HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN LENNARTSON, on behalf of himself and all others similarly situated,

                            Plaintiff,

            v.

PAPA MURPHY'S HOLDINGS, INC.,; and PAPA MURPHY'S INTERNATIONAL LLC,

                            Defendants.

CASE NO. C15-5307 RBL

ORDER DENYING SUMMARY JUDGMENT AND STAYING THE CASE

DKT. #19

THIS MATTER comes before the Court on Defendants Papa Murphy's Motion for Summary Judgment. [Dkt. #19, 23 praecipe]. Plaintiff Lennartson claims Papa Murphy's text messaged him and his putative class members without adequate prior express consent in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. Papa Murphy's argues that it obtained proper prior consent, and the FCC's 2012 interpretation of the TCPA is unconstitutional. It alternatively asks for a stay of these proceedings until the Supreme Court decides in *Spokeo, Inc. v. Robbins*, __ U.S. __, 135 S. Ct. 1892 (2015), whether Congress may confer Article III standing upon plaintiffs who suffer no concrete harm by authorizing private rights of action for bare violations of a federal statute.

In 2011, Papa Murphy's started texting those who had signed-up on its website to receive promotional messages and those who had texted numbers appearing in its advertisements. Its website informed consumers that they would receive four text messages per month and that message and data rates might apply. Lennartson registered through Papa Murphy's website in March 2012 to receive promotional text messages. [Dkt. #21, Brawley Dec.].

Papa Murphy's texted him at least eleven times. [Dkt. #2, Exhibit A, Text Message Screenshots]. He did not reply "stop" to any of these messages. On June 15, 2015, Papa Murphy's stopped texting those who had opted to receive messages before October 16, 2013.

Under the TCPA, it is unlawful for any person to use an automatic telephone dialing system[1] to call or text another's cell phone except for emergency purposes or unless prior express consent has been given. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir.) (holding that the FCC's interpretation that a text message is a "call" within the TCPA is reasonable). The FCC ruled in 1992 that absent instructions to the contrary, persons who knowingly released their phone numbers consented to be autodialed. *See In re Rules & Regs. Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992).

The FCC revised this ruling in February 2012, concluding that the required prior express consent must be in writing. *See In re Rules & Regs. Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1838, (Feb. 15, 2012) (hereinafter *2012 Order*). It defines "prior express written consent" as a written agreement authorizing delivery of advertisements or telemarketing messages by an autodialer to the signatory's telephone number. *See id*. at 1863. It requires the

---

[1] An "automatic telephone dialing system" is equipment with the capacity to store or produce telephone numbers using a random or sequential number generator and to dial such numbers. *See* 47 U.S.C. § 227(a)(1).

written agreement to include a clear and conspicuous disclosure: entering into the agreement is not a condition of purchase, an electronic signature is enforceable, and by executing the agreement, the signatory authorizes the seller to deliver telemarketing text messages using an autodialer. *See id*. at 1844, 1863. The FCC granted those who had obtained consent under the 1992 Order until October 16, 2013 to comply with these new prior written consent requirements. *See id*. at 1857; *see also In re Rules & Regs. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 8015 (July 10, 2015) (hereinafter *2015 Order*).

In July 2015, the FCC answered petitions by the Coalition of Mobile Engagement Providers and Direct Marketing Association to clarify its 2012 Order. *See 2015 Order*, 30 FCC Rcd. at 8012. Petitioners asked whether written consent obtained in congruence with the 1992 Order satisfied the 2012 Order. *See id*. The FCC reiterated such consent was not compliant merely because it was in writing. *See id*. at 8014. To be sufficient, the consent had to meet the definitional requirements of "prior express written consent" that the FCC's 2012 Order had outlined and had given telemarketers nearly two years to meet. *Compare 2012 Order*, 27 FCC Rcd. at 1844, 1863, *with 2015 Order*, 30 FCC Rcd. at 8013–14.

The FCC acknowledged, however, that petitioners could have reasonably interpreted its 2012 Order to suggest that consent previously given in writing would remain valid even if it did not satisfy the additional requirements of "prior express written consent" outlined by that Order. *See id*. For this reason, the FCC granted petitioners a waiver, effective retroactively and 89 days from the Declaratory Ruling, giving them additional time to make the disclosures necessary to obtain proper consent (as defined by the 2012 Order). *See id*. at 8014–15.

1    At issue is whether Papa Murphy's made sufficient disclosures to Lennartson such that it

2   obtained proper consent to text him with an autodialer system and whether this case should be

3   stayed pending resolution of *Spokeo, Inc. v. Robbins*.

### I.    DISCUSSION

**A.    Summary Judgment Standard.**

6    Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

7   file, and any affidavits show that there is no genuine issue as to any material fact and that the

8   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

9   an issue of fact exists, the Court must view all evidence in the light most favorable to the

10  nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*,

12  84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is

13  sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*,

14  477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to

15  require submission to a jury or whether it is so one-sided that one party must prevail as a matter

16  of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists

17  that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477

18  U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving

19  party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If

20  the nonmoving party fails to establish the existence of a genuine issue of material fact, "the

21  moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

22

23

24

**B.**     **Papa Murphy's Failed to Obtain Adequate Written Consent, and the 2015 Order Applies Retroactively.**

Papa Murphy's argues that it should not be penalized for its noncompliance with the 2012 Order because (1) under its interpretation of that rule, the prior express consent it had obtained under the 1992 Order remained valid because it was in writing, and the FCC concedes that its 2012 Order could have reasonably been interpreted that way; and (2) the 2015 Order represents an agency adjudicatory restatement that this Court cannot apply retroactively under *Montgomery Ward*, 691 F.2d 1322, 1333 (9th Cir. 1982), because its consent requirements caused a significant change in the law.

Lennartson argues that (1) the 2012 Order did not grandfather existing written consents that did not meet the definitional requirements of "prior express written consent"—that did not include a disclosure that an autodialer would be used and consent was not a condition of purchase—and (2) the 2015 Order, which only *clarified* an existing rule, can be applied retroactively under *Qwest Services Corporation v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007).

Papa Murphy's failed to comply with the requirements of written consent as defined by the 2012 Order. It continued to text Lennartson after October 16, 2013 without disclosing that it was using an autodialing system to do so. *See 2012 Order*, 27 FCC Rcd. at 1843–44, 1857, 1863.

 In *Montgomery Ward*, the Ninth Circuit explained when an agency's interpretation of a rule—an application of a previously articulated rule to particular factual circumstances—applies retroactively. *See* 691 F.2d at 1328–29, 1333. It adopted the D.C. Circuit's five factor test for balancing a regulated party's interest in being able to rely on a rule's plain terms against an agency's interest in retroactive application:

1
2
3
4
5

> Among the considerations that enter into a resolution of the
> problem are (1) whether the particular case is one of first
> impression, (2) whether the new rule represents an abrupt
> departure from well established practice or merely attempts to fill a
> void in an unsettled area of law, (3) the extent to which the party
> against whom the new rule is applied relied on the former rule, (4)
> the degree of the burden which a retroactive order imposes on a
> party, and (5) the statutory interest in applying a new rule despite
> the reliance of a party on the old standard.

6   *See id*. at 1333 (citing *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380,

7   390 (D.C. Cir. 1972)). The presumption of retroactivity does not apply if balancing weighs in

8   favor of the regulated party—when retroactivity would cause manifest injustice. *See Qwest*

9   *Servs. Corp. v. FCC*, 509 F.3d 531, 539 (D.C. Cir. 2007) (citing *AT&T v. FCC*, 454 F.3d 329,

10  332).

11          The FCC's 2015 Order clarified its 2012 Order. The 2015 consent requirements were not

12  an abrupt shift in the law, but rather, an affirmation of a rule articulated three years earlier. The

13  2012 Order "requires prior express written consent for all telephone calls using an automatic

14  telephone dialing system or a prerecorded voice to deliver a telemarketing message to wireless

15  numbers and residential lines." *2012 Order*, 27 FCC Rcd. at 1838. It defines "prior express

16  written consent" as a written agreement that includes a conspicuous disclosure: by executing the

17  agreement, the signator authorizes the seller to deliver her telemarketing messages using an

18  autodialer and signing the agreement is not a condition of purchase. *See id*. at 1863. The 2015

19  Order repeats that the 2012 Order "requires prior express written consent for telemarketing calls;

20  to get such consent, telemarketers must tell consumers the telemarketing will be done with

21  autodialer equipment and that consent is not a condition of purchase." *2015 Order*, 30 FCC Rcd.

22  at 8012–13. The 2015 Order did not supplant the 2012 Order. *See id*. at 8012–15.

23

24

1    Papa Murphy's did not follow the 2012 Order's requirements, nor did it petition the FCC

2    for clarification or relief. Despite the FCC's acknowledgement that some uncertainty surrounded

3    its 2012 Order, Papa Murphy's reliance "on its own (rather convenient) assumption that unclear

4    law would ultimately be resolved in its favor is insufficient to defeat the presumption of

5    retroactivity" upon clarification, because Papa Murphy's did not rely on settled law contrary to

6    the 2012 Order. *Qwest*, 509 F.3d at 540. Instead, it relied on its own erroneous reading of that

7    Order. Thus, the first three criteria weigh in favor of retroactivity.

8    Retroactivity would place a heavy burden on Papa Murphy's. If the Court were to certify

9    the proposed class, Papa Murphy's potential liability could be substantial. This criterion weighs

10   in Papa Murphy's favor.

11   Last, a statutory interest in applying the 2015 Order (which upholds the 2012 Order)

12   exists because the FCC first articulated its prior express written consent rule in 2012. If the 2012

13   Order confused Papa Murphy's, it could have petitioned the FCC for relief years ago, as the

14   Coalition of Mobile Engagement Providers and Direct Marketing Association did.[2]

15   Therefore, Papa Murphy's failed to comply with the 2012 Order, and nevertheless, the

16   2015 Order applies retroactively— to October 16, 2013 when the 2012 Order took effect. Papa

17   Murphy's motion for summary judgment is DENIED.

18   **C.**     **This Court Lacks Jurisdiction to Determine the Validity of the FCC's Rulings.**

19

20

21   ───────────────────

22   [2] Although an interest exists in applying a rule articulated by the FCC in 2012, repeated in 2015, and never administratively questioned by Papa Murphy's, the Court acknowledges that an

23   automatic telephone dialing system may annoy consumers less when used to text them rather than to robocall them, because text recipients need not converse with a machine. Disclosure of

24   the use of this system might therefore be less significant in the text messaging context.

1    Papa Murphy's also argues that the FCC's 2012 rule change, as set forth in 47 C.F.R. §

2    64.1200(a)(2)[3], is a content-based restriction on speech that cannot survive strict scrutiny under

3    *Reed v. Town of Gilbert, Ariz*, __ U.S.__, 135 S. Ct. 2218, 2226 (2015). Lennartson argues that

4    this Court lacks jurisdiction to assess the validity of the FCC's regulation because the circuit

5    courts have exclusive jurisdiction under the Hobbs Act, 28 U.S.C. § 2342 *et seq*., but even if the

6    Court were to rule, the regulation properly limits commercial speech.

7    The courts of appeals have exclusive jurisdiction to determine the validity of the FCC's

8    orders. *See* 28 U.S.C. § 2342(1); *see also US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049,

9    1054 (9th Cir. 2000); *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396–97 (9th Cir. 1996). "Orders"

10   include regulations. *See Cubbage v. Talbots, Inc.*, 2010 WL 2710628, at *4 (W.D. Wash. July 7,

11   2010); *see also Gottlieb v. Carnival Corp.*, 635 F.Supp.2d 213, 220–21 (E.D.N.Y.2009)

12   (discussing *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 416, 62 S. Ct.

13   1194 (1942)). Therefore, this Court lacks jurisdiction to review the constitutionality of the FCC's

14   2012 Order and 47 C.F.R. § 64.1200(a)(2).

15   Papa Murphy's motion for summary judgment on constitutionality grounds is DENIED.

16   **D.    Motion to Stay.**

17   Alternatively, Papa Murphy's asks the Court to stay these proceedings until the Supreme

18   Court decides whether Congress may confer Article III standing on a plaintiff who has only

19   alleged a private right of action based on a violation of a federal statute. *See Spokeo, Inc. v.*

20   *Robbins*, __ U.S. __, 135 S. Ct. 1892 (2015). Lennartson argues *Spokeo* is irrelevant, because he

21   _____

22   [3] No person or entity may "[i]nitiate or cause to be initiated, any telephone call that includes or
     introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing

23   system or an artificial or prerecorded voice, to any … lines or telephone numbers …, other than a
     call made with the prior express written consent of the called party …." 47 C.F.R.

24   § 64.1200(a)(2).

1 | and his putative class members allege actual injury—not merely a statutory violation of the

2 | TCPA.

3 |      In considering a motion to stay, the Court must balance the competing interests that a

4 | grant or a refusal will affect. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing

5 | *Landis v. North American Co.*, 299 U.S. 248, 254–255, 57 S. Ct. 163 (1936). It considers the

6 | possible damage that might result from a grant, the hardship or inequity a party might suffer by

7 | advancing the case, and the orderly course of justice measured by the simplification or

8 | complication of the issues, proof, and questions of law that could result from a stay. *See id*. The

9 | party seeking a stay bears the burden of showing his entitlement. *See Latta v. Otter*, 771 F.3d

10 | 496, 498 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S. Ct. 1749 (2009)).

11 |      Lennartson has articulated actual harm, explaining that consumers often must pay their

12 | cell phone service providers for each message received. *See* Dkt. #1, ¶ 4, ¶ 46 ("As a result of

13 | Defendants' violation, the members of the Class suffered actual damages by, inter alia, having to

14 | pay their respective wireless carriers for the text messages where applicable."). He will have

15 | standing regardless of the Supreme Court's decision.

16 |      But *Spokeo* could simplify or complicate the class certification process. For example, it

17 | could limit the size of Lennartson's putative class to those who paid their providers for each

18 | message Papa Murphy's sent them. Little advantage to proceeding with discovery and motions

19 | practice in the interim exists. Therefore, to promote the orderly course of justice, Papa Murphy's

20 | motion to stay the case until the Supreme Court resolves *Spokeo* is GRANTED.

21 |      The Court previously granted the parties' stipulated motion [Dkt. #31] extending the

22 | deadline for Lennartson to file a class certification motion by 120 days from the date of this

23 |

24 |

1  Order. That Order [Dkt. #32] is AMENDED, and the deadline for class certification is

2  EXTENDED by 30 days from the Supreme Court's *Spokeo* decision.

3       The parties shall notify the Court within seven days of the Supreme Court's decision.

4                              **II.    CONCLUSION**

5       The Court ORDERS:

6       Papa Murphy's Motion for Summary Judgment [Dkt. #19] is DENIED.

7       Its Motion to Stay [Dkt. #19] the case until the Supreme Court resolves *Spokeo, Inc. v.*

8  *Robbins*, __ U.S. __, 135 S. Ct. 1892 (2015) (No. 13-1339), is GRANTED. The parties shall

9  notify the Court within seven days of the Supreme Court's decision.

10      In light of this stay, the class certification deadline is AMENDED. [Dkt. #32].

11 Lennartson has 30 days from the Supreme Court's *Spokeo* decision to move for certification.

12      Papa Murphy's moves to strike the article referenced at footnote 8 of Lennartson's

13 Reponse and the article found at Exhibit G of the Hoidal Declaration. The quoted statements by

14 Papa Murphy's chief marketing executive and by its director of corporate communications

15 contained therein are admissible non-hearsay. *See* FRE 801(d)(2)(D). The advertisements are

16 admissible non-hearsay too. Therefore, Papa Murphy's Motion to Strike these articles is

17 DENIED. [Dkt. #27]. A broken link prevented the Court from considering Papa Murphy's

18 Motion to Strike the article referenced at footnote 7 of Lennartson's Response. [Dkt. #27].

19      Dated this 5th day of January, 2016.

20

21      _____

22      Ronald B. Leighton
        United States District Judge

23

24